UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KELLIE ACCURSO,                                                    **REPORT**
                                                                              **and**
                                                              **RECOMMENDATION**
                                           Plaintiff,

              v.
                                                                   **06-CV-13A(F)**

MAJESTIC POOLS, INC.,[1]
JOHN BUNCH,

                                           Defendants.

_____

APPEARANCES:          CREIGHTON, PEARCE, JOHNSEN & GIROUX
                                 Attorneys for Plaintiff
                                 CATHERINE CREIGHTON, of Counsel
                                 560 Ellicott Square Building
                                 295 Main Street
                                 Buffalo, New York 14203

                                 E. CAREY CANTWELL, P.C.
                                 Attorney for Defendants
                                 E. CAREY CANTWELL, of Counsel
                                 984 Ellicott Square Building
                                 295 Main Street
                                 Buffalo, New York 14203

                                 BROWN & KELLY, LLP
                                 Attorneys for Defendants
                                 LISA T. SOFFERIN, of Counsel
                                 1500 Liberty Building
                                 Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by the Honorable Richard J. Arcara on

_____

[1] The court takes notice that although Plaintiffs denominate "Majestic Pools" as a Defendant, Plaintiffs refer to this Defendant throughout the Complaint and motion papers filed in this action as both "Majestic Pools" and "Majestic Pools, Inc."  The parties do not dispute that "Majestic Pools" and "Majestic Pools, Inc." refer to the same entity.  In the interest of clarity and consistency, the court refers to the Defendant as "Majestic Pools, Inc."

March 1, 2006 for all pre-trial matters.  (Doc. No. 6).  The matter is presently before the

court on Defendants' cross-motion for summary judgment, filed on March 16, 2007.

## BACKGROUND

Plaintiff Kellie Accurso ("Plaintiff" or "Accurso") commenced this action on

January 6, 2006, alleging sexual discrimination in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") ("First Cause of Action" or "Title VII

claim"), the New York State Human Rights Law, New York Executive Law § 290 *et seq*.

("NYHRL") ("Second Cause of Action" or "NYHRL claim"), and a common law claim of

constructive discharge ("Third Cause of Action" or "the Constructive Discharge claim").

Complaint ¶¶ 52, 58, 61.  In particular, Plaintiff maintains that while employed by

Defendants Majestic Pools and John Bunch ("Defendants"), she was sexually harassed

by Majestic's sole owner, Bunch, Bunch's behavior created a hostile work environment

for Plaintiff, and, as a result of Bunch's conduct, Plaintiff was forced to resign.  Plaintiff's

Memorandum at 16-19, 22-23.

Defendants filed their answer on February 27, 2006, (Doc. No. 5), and an

Amended Answer with counterclaim was filed on March 20, 2006 (Doc. No. 9)

("Amended Answer").  On April 4, 2006, Plaintiff filed her answer to Defendants'

Counterclaim.  ("Answer to Counterclaim") (Doc. No. 11).  On March 16, 2007,

Defendants filed a Notice of Cross-Motion for Summary Judgment and/or protective

order.  (Doc. No. 21) ("Defendants' Cross-Motion").  In support of Defendants' Cross-

Motion and in opposition to Plaintiff's motion, Defendants filed the Affirmation of Lisa T.

2

Sofferin, Esq. ("Sofferin Affirmation"), the Affidavit of John Bunch ("Bunch Affidavit"), a

Statement of Undisputed Facts in Support of Motion for Summary Judgment

("Defendants' Fact Statement"), a Memorandum of Law in Support of Motion for

Summary Judgment and in Opposition to Plaintiff's Motion to Compel ("Defendants'

Memorandum"), Defendants' Appendix of Exhibits for Summary Judgment

("Defendants' Exh(s).___"), along with Exhibits A through N.

On May 18, 2007, Plaintiff filed Plaintiff's Memorandum of Law in Opposition to

Defendants' Motion for Summary Judgment (Doc. No. 27) ("Plaintiff's Memorandum"),

and attached the Creighton Affirmation, along with Exhibits A through J ("Plaintiff's

Exh(s). ___"), and Plaintiff's Response to Defendants' Rule 56 Statement of Undisputed

Facts in Support of Motion for Summary Judgment ("Plaintiff's Fact Statement").

Defendants, on June 5, 2007, filed Defendants' Reply Memorandum of Law in support

of Defendants' Cross-Motion for Summary judgment. (Doc. No. 29) ("Defendants' Reply

Memorandum").  Based on the following, Defendants' cross-motion should be

GRANTED in part, and DENIED in part.


# FACTS[2, 3]

At all times relevant, Defendant Bunch (""Bunch") owned and operated

Defendant Majestic Pools, Inc., a New York state corporation with its principal place of

---

[2] Taken from the pleadings and papers filed in the instant action.

[3] Defendants have disputed certain facts to which Plaintiff testified at Plaintiff's deposition, however, Defendants deem such facts to be undisputed for purposes of their cross-motion "to establish that even if Accurso's version of the facts were to believed [sic], and if all inferences are drawn in her favor, the Defendants are still entitled to judgment in their favor."  Defendants' Fact Statement at 2 n. 1.

business in Erie County, New York ("Majestic").  Complaint ¶ 3; Defendants' Fact

Statement ¶ 2; Plaintiff's Fact Statement ¶ 2 (together "Fact Statements ¶¶ ___").

Majestic "is in the retail pool and spa business."  Fact Statements ¶ 1; Bunch Affidavit ¶

2.  Plaintiff was hired by Bunch's brother, Larry Bunch, in July of 2000, to paint and

refurbish spas for Majestic as a part-time employee.[4]  Fact Statements ¶ 5; Defendants'

Exh. C ("Plaintiff's  Deposition") at 92, 78, 79, 100, 105.[5]  Bunch determined which

employees were hired, fired, and Majestic's employees' salaries and benefits.  Plaintiff's

Exh. F ("Larry Bunch Deposition") at 7; Scotland Deposition at 8, 12.  Prior to February

2001, Bunch agreed to provide Plaintiff with health insurance, effective February of

2001.  Fact Statements ¶¶ 7-8; Plaintiff's Deposition at 111, 115-116.  Plaintiff worked in

the spa department at Majestic, and her supervisor was Larry Bunch.  Scotland

Deposition at 12.

          Majestic displayed a sexual harassment policy in the workplace, which stated

> Because of the importance we place on these types of
> issues, this company has instituted a procedure for
> investigating harassment complaints.  It is our policy to
> investigate and resolve these issues in a prompt manner.  If
> you have been harassed, or another's conduct creates an
> intimidating, hostile, or offensive work environment, please
> notify one of the people listed below immediately.

Plaintiff's Exh. G ("Sexual Harassment Policy").

Bunch testified that Kathleen Scotland was listed as the contact person for allegations

---

[4] Bunch asserts Larry Bunch hired Plaintiff, but Larry Bunch indicated his hiring decisions require final approval by Bunch.  Bunch Deposition at 21-24; Larry Bunch Deposition at 12.  According to Kathleen Scotland, Bunch approves the hiring decisions made by Majestic crew chiefs including Larry Bunch.  Plaintiff's Exh. C ("Scotland Deposition") at 8, 12.

[5] The Complaint states that Plaintiff began working for Defendants in 2001.  Complaint ¶ 6. Plaintiff alleges that Defendants began subjecting Plaintiff to differential treatment beginning in 2002.

of harassment, but Scotland believed that Bunch was the individual listed as the person to contact with harassment complaints.  Bunch Deposition at 33-35; Scotland Deposition at 23.

In the summer of 2000, Bunch took Plaintiff for a ride in Bunch's private plane. Fact Statements ¶¶ 12; Plaintiff's Deposition at 118-119.  On at least one occasion, Bunch took Plaintiff and her children to Darien Lake and to eat at a restaurant.  Fact Statements ¶¶ 11, 17; Plaintiff's Deposition at 203, 205.  Plaintiff and Bunch went to a local casino together in October of 2000, Fact Statements ¶¶ 14; Plaintiff's Deposition at 136, and, during the summer of 2001, Plaintiff and Bunch flew from Lancaster, New York to Jamestown, New York, in Bunch's private plane, had lunch, and returned to Lancaster.  Fact Statements ¶¶ 15;  Plaintiff's Deposition at 120, 141.  In 2001, Bunch came to Plaintiff's home at least two times to drop off candles for Plaintiff and a slot machine for Plaintiff's children.  Fact Statements ¶¶ 16; Plaintiff's Deposition at 121, 123.  While Plaintiff worked for Majestic, Bunch fixed Plaintiff's car without  charge, Fact Statements ¶¶ 18; Plaintiff's Deposition at 257, and met Plaintiff and her children at a restaurant for dinner on Plaintiff's birthday, for which Bunch paid.  Fact Statements ¶¶ 18; Plaintiff's Deposition at 205-206.  Two Majestic employees installed a concrete patio at Plaintiff's house with concrete they had left over from another job and for which Plaintiff offered them wood.   Plaintiff's Fact Statement ¶¶ 19; Plaintiff's Deposition at 259.

In 2001, Plaintiff's hourly pay was raised to $10 per hour.  Fact Statements ¶¶ 20;  Plaintiff's Deposition at 117, 118.  Plaintiff left Majestic's employ from January to April of 2002 for higher-paying employment, Fact Statements ¶¶ 21;  Plaintiff's

Deposition at 96, 97, but returned to Majestic as a part-time employee in April 2002 at $10 per hour.  In July 2003, Plaintiff asked Bunch for a pay raise, and received a raise of $12 per hour.  Fact Statements ¶¶ 9; Plaintiff's Deposition at 193.

In March 2003, Bunch and Plaintiff traveled to and spent four days in California for what Plaintiff believed was a business trip.  Fact Statements ¶¶ 23; Plaintiff's Deposition at 191, 196, 198, 200.  Bunch and Majestic paid for the flight, hotels, and some meals for the California trip.  Fact Statements ¶¶ 24; Plaintiff's Deposition at 199.  While in California, Plaintiff and Bunch stayed in different rooms at the same hotel.  Fact Statements ¶¶ 25; Plaintiff's Deposition at 200.  They ate together and went sightseeing.  Fact Statements ¶¶ 26.

In 2003, Plaintiff offered to drive Bunch to radiation treatments he was receiving for prostate cancer if he needed a ride, but he did not.  Fact Statements ¶¶ 29; Plaintiff's Deposition at 150.  In the spring or summer 2003, Plaintiff placed an aloe plant and get well card, signed from "Me," in Bunch's vehicle in the Majestic parking lot.  Fact Statements ¶¶ 31; Plaintiff's Deposition at 168-170.  This was the only greeting card Plaintiff gave Bunch.  Fact Statements ¶¶ 33; Plaintiff's Deposition at 171.  Subsequently, in summer 2003, Bunch presented Plaintiff with a ring at work, and asked Plaintiff to marry him.  Fact Statements ¶¶ 35; Plaintiff's Deposition at 153.  Surprised and upset, Plaintiff declined Bunch's marriage proposal.  Fact Statements ¶¶ 36-37.  Bunch never asked her to marry him again.  *Id.* ¶¶ 38.

At or about the time Bunch proposed to Plaintiff, Bunch began leaving cards or letters, which alarmed Plaintiff, in Plaintiff's car while it was parked at Majestic during Plaintiff's work hours.  Fact Statements ¶¶ 41; Plaintiff's Deposition at 213.  Between

the summer of 2003 to the spring of 2004, when Bunch stopped leaving cards directed to Plaintiff in Plaintiff's car, Bunch had given Plaintiff approximately 54 "Hallmark-type" cards, and one multiple page letter.  Fact Statements ¶¶ 42-43.  Some of these cards were signed "Love John," *e.g.,* Plaintiff's Exhs. I-26, I-27, I-29, I-8, I-46 and I-59; Fact Statements ¶¶ 44.  Some cards included personal messages professing Bunch's love for Plaintiff, specifically, his desire to be with and care for Plaintiff.  *Id.* ¶¶ 45; Plaintiff's Exhs. I-8, I-10, I-12, I-13, and I-16.  Plaintiff told Bunch that the cards were unwelcome, and complained to Larry Bunch and Kathy Scotland, Bunch's brother and sister, about the continued attention she received from Bunch, but no action was taken.  *Id.* ¶¶ 46; Scotland Deposition at 16-18; Larry Bunch Deposition at 33.  Plaintiff states "there may have been other cards prior to this time," and Plaintiff cannot remember exactly when she received the first card from Bunch or when the cards stopped.  Plaintiff's Fact Statement ¶¶ 41-42.  Plaintiff told Larry Bunch that Bunch was a "creep," and Larry Bunch replied "[h]e [Larry Bunch] knew that that's how his brother is and always will be." Plaintiff's Deposition at 176 (bracketed material added).  Plaintiff cried about Bunch's conduct toward her several times at work.  Plaintiff's Exh. D ("Testa Deposition") at 17.  Plaintiff kept most of the cards given to her by Bunch because Larry Bunch advised her to do so.  Fact Statements ¶¶ 49; Plaintiff's Deposition at 172.  Between the spring of 2004 until December 3, 2004, Plaintiff did not receive any cards from Bunch.  Fact Statements ¶¶ 54; Plaintiff's Deposition at 207.

In December 2003, Bunch gave Plaintiff $1500 in several increments.  Fact Statements ¶¶ 52.  Plaintiff did not offer to give the money back and told Bunch she couldn't pay him back.  *Id.* ¶¶ 53.  Bunch began seeing his former girlfriend between

March 2004 and November 30, 2004, a period during which Bunch discontinued leaving Plaintiff cards.  *Id.* ¶¶ 55.  However, Bunch slapped Plaintiff on her buttocks on two occasions during this time.  *Id.* ¶¶ 55, 58.

In November 2004, Bunch asked Plaintiff if she would attend the annual Pool and Spa Show, which took place in Las Vegas on December 1, 2 and 3, 2004, and Plaintiff agreed.  Fact Statements ¶¶ 59-60; Plaintiff's Deposition at 211.  Cindy Bunch, Bunch's daughter, and other Majestic employees were also to attend the show, and Bunch's former girlfriend was supposed to attend the show, as well.  Fact Statements ¶¶ 62-63.  Bunch purchased Plaintiff's airline ticket and arranged for Plaintiff and his daughter, Cindy, to room together at a different hotel than that at which Bunch and the other Majestic employees stayed.  *Id.* ¶¶ 64.

After arriving at the local airport on November 30, 2004 for the flight to Las Vegas, Plaintiff learned that Bunch's girlfriend was not attending the show.  Fact Statements ¶¶ 65.  Bunch did not sit with Plaintiff on the flight.  *Id.* ¶¶ 66.  The first night in Las Vegas, while Plaintiff played the slot machines with Cindy and other Majestic employees, Bunch approached Plaintiff and touched her shoulder.  *Id.* ¶¶ 69; Plaintiff's Deposition at 218.  Plaintiff and Cindy moved to the roulette table and Bunch followed, placing $300 on the table for them to play with.  Fact Statements ¶¶ 70.  Plaintiff was gambling with Bunch's money when Bunch began touching Plaintiff's arms and back.  *Id.* ¶¶ 71.  Plaintiff asked Bunch not to touch her, stating she was not Bunch's girlfriend, but Bunch's behavior continued.  *Id.* ¶¶ 72; Plaintiff's Deposition at 219.  Plaintiff,

Bunch, and Cindy then went to the bar to meet up with some other spa professionals. [6]

Fact Statements ¶¶ 73.  After ordering drinks, Bunch began touching Plaintiff on her

back, arms and legs.  *Id.* ¶¶ 74.  Plaintiff asked Bunch, for the second time, to stop

touching her or stated she would embarrass him in front of the others.  *Id.* ¶¶ 75;

Plaintiff's Deposition at 222.  Plaintiff finished her drink, left the bar, and did not see

Bunch for the rest of the night.  Fact Statements ¶¶ 76.  Plaintiff did not attend the first

day of the Pool and Spa Show, which was the next day, December 1, 2004.  *Id.* ¶¶ 77.

Plaintiff spent the day shopping and gambling.  *Id.* ¶¶ 78.  Plaintiff tried to avoid Bunch

in Las Vegas.  Testa Deposition at 22; Plaintiff's Exh. E ("Cindy Bunch Deposition") at

18.

Plaintiff did not see or speak with Bunch on the second or third day of the show,

but learned Bunch had called various Majestic employees on the second and third days

of the show attempting to locate Plaintiff.  Fact Statements ¶¶ 80.  Plaintiff knew she

was supposed to attend the show and did attend the last day of the Pool and Spa Show

in Las Vegas on December 3 with Bunch after Cindy Bunch, the store manager, and

Kathy Scotland, the office manager, instructed her to do so. [7]  *Id.* ¶¶ 82.  On December

3, 2004, Bunch met Plaintiff in the lobby of her hotel and they walked to the convention

center where the Pool and Spa Show was taking place.  *Id.* ¶¶ 83.  They attended the

show without incident, and afterward, went shopping at a flea market where Bunch

helped to pay for a purchase Plaintiff made.  *Id.* ¶¶ 84; Plaintiff's Deposition at 231.

---

[6]  It is unclear whether Bunch, Plaintiff and Cindy walked to the bar together, or simply met there.

[7]  Plaintiff testified that Kathy Scotland told her to go to the convention and "take one for the team." Plaintiff's Deposition at 231.

While in the store-restaurant, "Margaritaville," looking to purchase some items for her children, Plaintiff agreed to have a drink with Bunch.  Fact Statements ¶¶ 85; Plaintiff's Deposition at 233-34.  Bunch again began rubbing Plaintiff's back, legs and arms, to which Plaintiff told Bunch to stop and leave her alone, stating "I can't stand you."  Fact Statements ¶¶ 86; Plaintiff's Deposition at 234.  Plaintiff and Bunch argued all the way back to the hotel.  Fact Statements ¶¶ 88.  Along the way, Bunch gave Plaintiff another letter, which he wrote in Las Vegas, stating his feelings for her and which she read after parting from Bunch and returning to her hotel.  *Id.* ¶¶ 89-91.  That night, which was their last evening in Las Vegas, Bunch, Cindy and Plaintiff dined together without incident.  *Id.* ¶¶ 92.  Afterward, Cindy and Plaintiff went to a casino without Bunch.  *Id.* ¶¶ 95; Plaintiff's Deposition at 236.  Bunch was never in Plaintiff's hotel room during the trip.  Fact Statements ¶¶ 96.

After Plaintiff returned to Buffalo on December 4, 2004, Plaintiff discussed with Larry Bunch taking time off from work because of Bunch's behavior in Las Vegas.  Fact Statements ¶¶ 98-99.  Larry Bunch encouraged Plaintiff to continue working and told her Bunch would not bother her.  *Id.* ¶¶ 99; Plaintiff's Deposition at 242.  For approximately two weeks after returning to work, the Plaintiff and Bunch avoided each other.  Fact Statements ¶¶ 100-01.  Upon exiting the restroom one day, Plaintiff ran into Bunch, who asked "what's your problem?"  Plaintiff's Deposition at 243.  In response, Plaintiff asked Bunch to leave her alone, stating she could not be around him because he continued to bother her.  *Id.*; Fact Statements ¶¶ 104.  On December 16, 2004, Plaintiff concluded she could no longer work for Defendants, and terminated her employment at Majestic.  Fact Statements ¶¶ 105.  Bunch never explicitly requested

10

sexual favors from the Plaintiff and never told Plaintiff she would lose her job if she did not have a sexual relationship with him.  *Id.* ¶¶ 107-08.  On March 1, 2005, Plaintiff's counsel filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶¶ 112 (referencing Defendants' Exhs. L and M).  The EEOC issued its right to sue letter on October 13, 2005.  Fact Statements ¶¶ 113. Plaintiff commenced the instant action on January 6, 2006.  *Id.* ¶¶ 114.


## DISCUSSION

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir. 1991).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Tenenbaum v. Williams,* 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra,* 477 U.S. at 255); *Rattner, supra*.  The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment.  *Celotex,* 477 U.S. at 322; *see Anderson,* 477 U.S. at 247-48.

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to

be tried.  *Rattner, supra,* at 209.  In assessing the record, including any affidavits,

exhibits, and other submissions, the court is required to resolve all ambiguities and to

draw all factual inferences in favor of the nonmoving party.  *Anderson, supra,* at 255;

*Rattner, supra,* at 209.  If the moving party meets its burden of demonstrating the

absence of any genuine issue of material fact, the nonmoving party must come forward

with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

The nonmoving party may not rest upon unsubstantiated allegations, conclusory

assertions or mere denials, but must set forth and establish specific facts showing that

there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  A metaphysical or other

whimsical doubt concerning a material fact does not establish a genuine issue requiring

trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584 (1986), *cert.*

*denied,* 481 U.S. 1029 (1987).


I.      **Bunch's Individual Liability Under Title VII and the NYHRL**

        Defendants argue Bunch is not subject to individual liability under Title VII.

Defendants' Memorandum at 17.  Plaintiff contends that the cases Defendants rely

upon consider whether supervisors and co-workers may be held individually liable under

Title VII, but do not address potential owner liability.  Plaintiff's Memorandum at 21.

        "Being an owner, principal shareholder and/or general partner of a defendant

corporation that engages in discriminatory action does not cause an individual to be

liable under Title VII."  *Szatkowski v. Maxwell's Bar and Grill/Rid Enterprise,* 2006 WL

1389772, at * 4 n. 1 (W.D.N.Y. 2006); *see also E.E.O.C. v. Johnson & Higgins, Inc.,* 91

F.3d 1529, 1538 (2d Cir. 1996) (under the ADEA), *cert. denied*, 522 U.S. 808 (1997);

12

*Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (individual supervisors not personally liable under Title VII).  In *Szatkowski, supra*, the court held plaintiff could not recover compensatory or punitive damages under Title VII against an individual defendant who was plaintiff's supervisor and owner of defendant.[8]  *Szatkowski,* 2006 WL at * 4.  However, in *Szatkowski* both defendants were subject to liability and compensatory damages under the New York Human Rights law.[9]  *Id.*  As relevant, the New York Human Rights Law provides that

> [a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination . . . if he is not shown to have any ownership interest or any power to carry out personal decisions by others.

*Id.* (quoting *Patrowich v. Chemical Bank*, 473 N.E.2d 11, 12 (N.Y. 1984)).

Here, the evidence demonstrates that Bunch, though not Plaintiff's direct supervisor, was the owner of Majestic and approved all decisions to hire, fire, or promote Majestic employees.  The record also shows that Plaintiff's direct supervisor, Larry Bunch, was aware of the harassment and Plaintiff's discomfort around Bunch, based on Bunch's romantic interest in Plaintiff but dismissed Plaintiff's complaints with comments such as "that's how [my] brother is and always will be."  Plaintiff's Deposition at 176; *see* Larry Bunch Deposition at 31, 33.  Kathleen Scotland, Bunch's sister who had authority to hire employees for Majestic's office, testified she knew that Plaintiff was uncomfortable with Bunch's conduct but did nothing because, according to Scotland,

---

[8] Plaintiff may recover punitive damages against Majestic.  *Szatkowski, supra,* at * 4.

[9] "[T]he Human Rights Law does not allow for the recovery of punitive damages." *Id.* (citing *Thoreson v. Penthouse Intern., Ltd.,* 606 N.E.2d 1369, 1372-73 (N.Y. 1992)).

13

Plaintiff and Bunch "were friends anyway, if it happened, I really didn't make much of it." Scotland Deposition at 8, 16-18.   Additionally, upon learning from Plaintiff that Plaintiff was uncomfortable attending the conference with Bunch in Las Vegas, Scotland allegedly encouraged Plaintiff to go and "take one for the team."   Thus, not only may Bunch be liable under the NYHRL for sexual harassment against Plaintiff but Majestic as well.   As such, Defendant Bunch's cross-motion directed to Plaintiff's Title VII claim against him should be GRANTED; however, Defendant's cross-motion directed to Plaintiff's claim against Defendant Bunch, individually, for violations of the NYHRL should be DENIED.


**II.    Plaintiff's Title VII Sexual Harassment Claim**

As stated, Background, *supra,* at 2, Plaintiff, in her First Cause of Action, alleges Defendants engaged in unlawful, sexual discrimination against her in violation of Title VII.   Title VII states "it shall be unlawful employment practice for an employer to . . . discharge any individual, or otherwise discriminate against any individual . . . because of such individual's sex."   42 U.S.C. § 2000e-(a)(1).   "Under Title VII, sexual harassment may constitute illegal sex discrimination."   *Stetka v. Hunt Real Estate Corp.*, 859 F.Supp. 661, 665 (W.D.N.Y. 1994) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57 (1986)).   Under Title VII, plaintiffs may assert sexual discrimination claims which are *quid pro quo* or based on a hostile work environment.   *Burlington Industr., Inc. v. Ellerth*, 524 U.S. 742, 752-53  (1998); *Liebovitz v. N.Y. City Transit Auth.,* 252 F.3d 179, 188 (2d Cir. 2001); *Clarke v. Mount Sinai Hosp.*, 2007 WL 2816198, at * 7 (E.D.N.Y. 2007). "The distinction between the two forms of sexual harassment serves to instruct that Title

14

VII is violated by either explicit or constructive alterations in the terms or conditions of employment and to explain [that] the latter must be severe or pervasive." *Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 57 (2d Cir. 2004) (quoting *Burlington Industr., Inc.*, 524 U.S. at 753) (internal quotation omitted)).

### A.   Plaintiff's *Quid Pro Quo* Harassment Claim under Title VII

The EEOC Guidelines define *quid pro quo* harassment as

> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual. . .

29 C.F.R. § 1604.11(a).

The EEOC's Guidelines, "'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Meritor Sav. Bank,* 477 U.S. at 65 (quoting  *Griggs v. Duke Power Co.*, 401 U.S. 424, 433-34 (1971)).  "The EEOC Guidelines fully support the view that harassment leading to noneconomic injury can violate Title VII."  *Id.*

"*Quid pro quo* harassment occurs when submission to or rejection of [improper sexual] conduct by an individual is used as the basis for employment decisions affecting such individual." *Clarke,* 2007 WL at * 7.  Plaintiff's *prima facie* case of *quid pro quo* discrimination must establish that a "tangible employment action" was taken against Plaintiff because Plaintiff failed to "submit to sexual advances."  *Id*. (citing *Schiano v.*

*Quality Payroll Sys., Inc.*, 445 F.3d 597, 604 (2d Cir. 2004) (quoting *Mormol*, 364 F.3d at 57)).  The Supreme Court has defined "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing significant change in benefits."  *Mormol,* 364 F.3d at 57.

Plaintiff argues that Defendant Bunch engaged in *quid pro quo* discrimination against Plaintiff by offering her "gifts, money, and indeed, the opportunity not to work and be cared for by him if she gave into his demand for a relationship."  Plaintiff's Memorandum at 6.  Plaintiff relies on *Burlington Industr., Inc.,* 524 U.S. at 745, to maintain that Plaintiff need not show tangible job action was taken against Plaintiff to state a claim for *quid pro quo* harassment.  Plaintiff's Memorandum at 17 citing *Burlington*, 524 U.S. at 745.  In *Burlington Industr., Inc.*, *supra*, the court held an employer is subject to vicarious liability in *quid pro quo* actions where tangible job action was taken against the employee, "*i.e.*, a significant change in employment status, such as discharge, demotion, or undesirable reassignment."  Here, the record in the instant case is devoid of evidence that Plaintiff suffered any tangible, adverse change in the terms and conditions of her employment at Majestic as a result of her refusal to acquiesce to Bunch's sexual advances.  Plaintiff cites no authority to support her argument that Bunch's promises of a better life if Plaintiff entered into a marital relationship with him constitutes *quid pro quo* harassment, and the court's research has revealed none.  Thus, even if Bunch's continuous expressions of a strong romantic interest in Plaintiff, including physical touching and a proposal of marriage, are treated as sexual in nature, absent any consequent and substantial adverse effect on Plaintiff's

working conditions, such conduct does not constitute a *quid quo pro* claim sufficient for Title VII.

Instead of a tangible, adverse employment action based on her sex, the record shows that Plaintiff received a pay raise and, at Plaintiff's request, was provided health insurance despite Plaintiff's refusal to engage in a physical relationship with Bunch. Plaintiff received other benefits while working at Majestic, including miscellaneous gifts from Bunch, such as a slot machine for her children and candles for herself, having her car fixed free of charge, installation of a patio at her residence, and receiving a large gift of money from Bunch.  Thus, because the only tangible actions taken by Bunch in relation to Plaintiff were  employment and personal actions favorable to Plaintiff, Plaintiff has failed to establish a *prima facie* case of *quid pro quo* discrimination under Title VII, and Defendants' motion for summary judgment directed to Plaintiff's *quid pro quo* sexual discrimination claim in violation of Title VII should, therefore, be GRANTED.

### B.    Plaintiff's Hostile Work Environment Sexual Harassment Claim

To state a claim of hostile work environment based on sexual discrimination under Title VII, the harassment must be so severe and pervasive as to "alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank*, 477 U.S. at 67 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904  (11th Cir. 1982)); *Schiano*, 445 F.3d at 603.  "[W]hat is needed is the allegation of factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment because of her sex."  *Gregory v. Daly*, 243 F.3d 687, 694 (2d Cir. 2001) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Under Title VII, "[a] work environment will be considered hostile if a reasonable person

17

would have found it to be so and if the plaintiff subjectively so perceived it." *Mormol,* 364

F.3d at 58.  The court considers the totality of the circumstances in assessing whether a

reasonable person would deem such environment hostile.  *Mormol, supra* (citing

*Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)).  Such circumstances

should include "(1) the frequency of the conduct, (2) the severity of the conduct, (3)

whether the conduct is physically threatening or humiliating, or a mere offensive

utterance, and (4) whether the conduct unreasonably interferes with the employee's

work performance."  *Mormol, supra,* at 58 (citing *Brennan,* 192 F.3d at 318).

Hostile work environment claims based on sexual harassment "present mixed

questions of law and fact that are especially well-suited for jury determination.*"*

*Schiano*, 445 F.3d at 605 (internal quotation omitted).  Summary judgment may be

granted on a claim of hostile work environment in violation of Title VII if "no reasonable

factfinder could conclude, considering all the circumstances, that the alleged

harassment is of such quality or quantity that a reasonable employee would find the

conditions of her employment altered for the worse as a result of discrimination

prohibited by Title VII."  *Mattison v. Potter*, 515 F.Supp.2d 356, 372 (W.D.N.Y. 2007)

(citing *Schiano,* 445 F.3d at 600). "The incidents of allegedly offensive conduct must

also be 'more than episodic; they must be sufficiently continuous and concerted in order

to be deemed pervasive."  *Mattison*, 515 F.Supp.2d at 372 (citing *Holtz v. Rockefeller &

Co.*, 258 F.3d 62, 75 (2d Cir. 2001) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143,

149 (2d Cir. 1997))).

In this case, based on the evidence considered as a whole, a reasonable juror

could find that the behavior of Bunch was sufficiently frequent, severe and pervasive,

and related to sexual matters based on Plaintiff's gender.  *See Meritor Sav. Bank*, 477

U.S. at 67; *Gregory*, 243 F.3d at 694.   The act of leaving 54 "Hallmark-type cards" over

approximately a one-year period in Plaintiff's unlocked car expressing Bunch's physical

desire for Plaintiff while Plaintiff worked at Majestic supports a finding that Defendant's

conduct was frequent and severe.  Moreover, contrary to Defendants' assertion that the

cards are nothing but honorable expressions of Bunch's personal feelings for Plaintiff,

Defendant's Memorandum at 9-10, the cards and messages Defendant wrote to Plaintiff

contained therein, could be found by the trier of fact as offensive, inappropriate, strange,

overly aggressive, intimidating and pervasive, as well as sexual in nature.  For example,

one card which Bunch delivered to Plaintiff reads "I'd follow you anywhere . . . The view

from <u>behind</u> is great," under which, Bunch writes

> IT IS
> LOVE YOU JOHN
> xxxxxxxxxxxxx
> oooooooooooooooo
> BUT I'D MUCH RATHER BE LOOKING AT YOU'RE [SIC] LOVELY
> FACE AND HOLDING HUGGING [SIC] AND LOVING YOU.

Plaintiff's Exh. H (underlining added).

Another such card reads: "Need a hug . . . I just happen to have a couple handy," under

which, Bunch writes

> CAN'T STAND IT
> CAN'T SIT IT [sic]
> I MISS YOU <u>NOW</u>
> I NEED YOU, I WANT YOU
> I LOVE YOU
> GET YOU FANNY IN GEAR
> PICKUP THE PHONE AND
> CALL ME <u>RIGHT NOW</u>
> I CAN'T WAIT TO HEAR YOUR SWEET
> VOICE AND WHAT'S GOING ON IN

YOUR LIFE, MINE IS BORING
WITHOUT YOU.  WHAT'S A GUY
GOTTA DO TO GET YOUR <u>ATTENTION</u> (AND AFFECTION).

Plaintiff's Exh. H (underlining in original).


In a Christmas card Bunch mailed to Plaintiff, Bunch signed the card and wrote

LOVE JOHN
XXXXXXXXXXXXXX
OOOOOOOOOOOOOOO
I WAS GOING TO BUY YOU A BIG TV BUT I COULDN'T FIND
OUT IF YOU ALREADY BOUGHT ONE.  BUT WE CAN GET ONE
THIS WEEK IF YOU'LL GO WITH ME.  I BOUGHT MANY MORE
GIFTS BUT AFTER THE LAST FEW DAYS I REALIZE THAT NO
MATTER WHAT I SAY OR DO YOU WILL NEVER BE THERE OR
CARE FOR ME AND THESE THINGS WOULD BE VERY
INAPPROPRIATE UNDER THE CIRCUMSTANCES.

Plaintiff's Exh. H.

And on a blank card to Plaintiff, Bunch wrote

<u>What Life Could Be Like</u>
* I BRING YOU YOUR MORNING COFFEE
*KISS YOU AND TELL YOU HOW BEAUTIFUL YOU ARE IN THE MORNING
*YOU DON'T HAVE TO WORK IF YOU DON'T WANT TO
*YOU HAVE A NICE CAR
*YOU HAVE MONEY IN YOUR POCKET AND NO BILLS
*WE GO SHOPPING FOR JEWELRY AND YOU VERY OFTEN
*WE GO TO A LOT OF PLACES AND SEE A LOT OF THINGS TOGETHER
        AUSTRALIA, DISNEYWORLD, LAS VEGAS, CALIFORNIA, GRAND CANYON,
        FLORIDA, MEXICO, CRUISE ETC.
*I BRING YOU FLOWERS, CARD OR A GIFT EVERY DAY TO LET YOU KNOW HOW
MUCH I LOVE YOU AND APPRECIATE YOU
*I HELP YOU AROUND THE HOUSE
*WE DO A LOT OF THINGS WE BOTH LIKE TOGETHER.  DINNER, SHOWS,
GAMBLING
*WE BUILD A NEW HOUSE TOGETHER THE WAY YOU WOULD LIKE IT WITH ALL
NEW FURNITURE
*I HOLD YOUR HAND ALWAYS
*I HUG YOU CONSTANTLY
*I HOLD, COMFORT YOU AND WAIT ON YOU WHEN YOUR [SIC] SICK OR DON'T
FEEL WELL

\*I MAKE YOU FEEL LIKE YOUR [SIC] THE MOST WANTED WOMAN IN THE WOLD
\*I TAKE YOU WITH ME TO ALL THE SHOWS AND CONVENTIONS BECAUSE I
WANT YOU TO BE BY MY SIDE
\*WE GO SOUTH OR WEST FOR MOST OF THE WINTER TO ESCAPE THE DAM
[SIC] COLD
\*OH I ALMOST FORGOT WE GO TO THE CASINO A LOT
\*WE BOTH WORK OUT HARD TOGETHER AND BEAT OUR HEALTH PROBLEMS
\*WE SHARE OUR LIFE TOGETHER
\*WE HAVE FUN, WE ENJOY LIFE, WE DO THINGS, WE SEE THINGS WHENEVER
AND WHATEVER WE WANT
<u>LIFE IS SHORT</u>     <u>TIME IS SHORT</u>
\*I KISS AND HOLD YOU EVERY NITE [SIC] TO LET YOU KNOW YOU WILL ALWAYS
BE LOVED, PROTECTED AND TAKEN CARE OF BY ME FOREVER

THE ONLY THING MISSING FROM THIS LIFE THAT COULD BE IS <u>YOU</u>
IT'S NOT A LIFE THAT COULD BE
IT IS A LIFE THAT SHOULD BE
YOU AND ME ALWAYS.

As stated, Plaintiff told Bunch that the cards were unwelcome, Facts, supra, at 7, but

Defendant continued to leave them for Plaintiff.  Plaintiff's Deposition at 167, 171.  A fair

reading of Bunch's statement could be found by a reasonable juror to show that  Bunch

acknowledged Plaintiff's rejection of his affections for Plaintiff as expressed in these

cards, yet he continued to pursue his love interest in Plaintiff through his persistent

written communications delivered to her at the workplace.

It is also reasonable, based on the record, that the jury may interpret

Defendant's behavior, which included slapping Plaintiff on the buttocks, hugging

Plaintiff, allegedly against her will, and rubbing her back, legs and arms in front of her

peers, as Defendant did on the first night of the Pool and Spa Convention in Las Vegas,

as humiliating conduct of a sexual nature, as well as physically threatening to Plaintiff,

and interfering with Plaintiff's ability to do her job.[10]  In particular, when Bunch proposed

to Plaintiff in the Majestic parking lot, Plaintiff became visibly upset and ran away crying.

Plaintiff's Deposition at 157, 161-62.  Thereafter, Bunch's allegedly aggressive and

unwelcome behavior at the casino bar the night before the Las Vegas convention in

front of Plaintiff's peers, according to Plaintiff, caused Plaintiff to avoid attending the first

few days of the convention because she was uncomfortable around Bunch.  Upon

returning to Buffalo, Plaintiff expressed reservations immediately to Larry Bunch about

returning to work for Majestic, from which a reasonable juror could infer that Bunch's

harassment interfered with Plaintiff's ability to do her job, resulting in her resignation.

Thus, the court finds that the record is replete with evidence that Bunch's sexual

advances directed to Plaintiff were reasonably perceived by Plaintiff as more than

unactionable "offensive utterances," *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23,

"simple teasing," *Oncale,* 523 U.S. at 82, "offhand comments," or "isolated incidents."

*Faragher,* 524 U.S. at 788.

Central to the issue of Majestic's liability on Plaintiff's Title VII claim are

allegations by Plaintiff, and related evidence, that Majestic's management and other

employees were aware of Bunch's harassing behavior but did nothing about it and

appeared to dismiss Plaintiff's complaints.  For example, when Plaintiff advised Larry

Bunch, Plaintiff's supervisor at Majestic, of her desire not to return immediately to work

---

[10] Conversely, a jury may reasonably find, based on the record, that Plaintiff consented to, participated in or indulged Bunch's romantic fantasies by not consistently protesting his advances and by choosing to spend a substantial amount of time with Bunch during and outside of work.  Irrespective of which view the jury adopts, genuine issues of fact, on Defendants' defense that Bunch's conduct toward Plaintiff was not, as Plaintiff alleges, unwelcome, remain.

upon her return to Buffalo from the 2004 trip to Las Vegas, Larry Bunch, who earlier acknowledged the sexual nature of Plaintiff's complaints about Bunch by agreeing to her characterization of Bunch as  a "creep," Plaintiff's Deposition at 176, encouraged her to continue working, simply stating that "[Bunch] will probably leave you alone for a while." Plaintiff's Deposition at 241 (underlining added).  Significantly, there is no evidence in the record that Larry Bunch discussed Bunch's behavior with Bunch, followed any procedure under a functional anti-discrimination policy, or did anything but dismiss Plaintiff's concerns.  Several weeks later, encountering Bunch upon exiting the employee bathroom at Majestic caused Plaintiff to become too emotionally upset to continue working at Majestic.  Plaintiff's Memorandum at 12 (referencing Plaintiff's Deposition at 243).  Defendants do not deny Plaintiff complained to her superiors, Larry Bunch and Kathy Scotland at Majestic, on several occasions but that no affirmative action intended to prevent Bunch's behavior toward Plaintiff was taken.  When Plaintiff spoke with Kathy Scotland on the phone from her hotel room in Las Vegas about Bunch's conduct and Plaintiff's desire not to attend the convention because she "didn't want to see John anymore," Scotland encouraged Plaintiff to dine with Bunch, and "take one for the team."  Plaintiff's Deposition at 230-31.  Tellingly, Larry Bunch speculated Plaintiff may have quit working at Majestic because "she wasn't comfortable working there," Larry Bunch Deposition at 31, implying that persons, such as himself, who were in management positions at Majestic were aware of, and condoned, Bunch's harassing behavior of a sexual nature.

Should the jury determine that Bunch discriminated against Plaintiff in violation of Title VII based on Plaintiff's claim of sexual harassment in the workplace, the jury may

find that Majestic is vicariously liable for Bunch's actions.  In *Burlington Industr., Inc.,*
*supra,* the Supreme Court found an employer may be vicariously liable to a Plaintiff for a
hostile work environment created by a supervisor.  *Burlington Industr., Inc.,* 524 U.S. at
765.  In particular, the court held that an employer may be liable under Title VII for a
hostile environment  "created by a supervisor with immediate (or successively higher)
authority over the employee" unless the employer shows "(a) that the employer
exercised reasonable care to prevent and correct promptly any sexually harassing
behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of
any preventative or corrective opportunities provided by the employer or to avoid harm
otherwise."  *Id.*  Here*,* Bunch maintained supervisory authority over Plaintiff and the
other Majestic employees, as he had the final say on the hiring, firing, promotion or
demotion of Majestic's employees, even if Bunch was not Plaintiff's immediate
supervisor.  On this record, a reasonable juror could find that when Plaintiff complained
to her immediate supervisor, Larry Bunch, and Kathy Scotland, another individual with
management responsibilities at Majestic, about Bunch's harassing behavior, both were
dismissive of her complaints, and failed to take any corrective measures against Bunch.
Thus, the court finds there is sufficient evidence to support a finding that Majestic is
vicariously liable for the hostile work environment created by Bunch pursuant to
Majestic's sexual anti-discrimination policy.  *See Burlington Industr., Inc.,* 524 U.S. at
745, 754.[11]  In any event, assuming a "reasonable juror may . . . disagree about whether

---

[11]  Although Majestic maintained a posted anti-discrimination policy, Facts, *supra*, at 4, as Bunch,
Majestic's undisputed owner and general management, is the alleged perpetrator of the sexual
harassment directed at Plaintiff, such 'safe-harbor' policy provides no defense against Plaintiff's damages
to Majestic.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998) (employment policy no
defense to employee discharge caused by senior manager's sexual harassment) (citing *Burlington*

these incidents would negatively alter the working conditions of a reasonable employee[,] . . . the potential for such disagreement renders summary judgment inappropriate." *Schiano*, 445 F.3d at 608.

Therefore, Defendants' motion as to Defendant Majestic should be DENIED. However, as discussed, Discussion, *supra*, at 12-14, Bunch cannot be held individually liable for Plaintiff's Title VII sexual harassment claim, Defendants' motion directed to Bunch should, on this ground, be GRANTED.

### III.     Plaintiff's Constructive Discharge Claim

"Title VII encompasses employer liability for a constructive discharge." *Pennsylvania State Police v. Suders,* 542 U.S. 129, 143 (2004).  As stated, Discussion, *supra,* at 23-24, the two bases, recognized by *Burlington Industr., Inc.,* 524 U.S. 742, 765, and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998), for finding an employer liable to an employee for a supervisor's sexual harassment include "(1) harassment that culminates in a tangible employment action for which employers are strictly liable" and "(2) harassment that takes place in the absence of a tangible employment action, to which employers may assert an affirmative defense."  *Suders*, 542 U.S. at 143 (citing cases) (internal quotations omitted).  Thus, a plaintiff's constructive discharge may serve as the tangible employment action which prevents a Title VII defendant from raising affirmative defenses that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and that "the plaintiff

---

*Industries, Inc.*, 524 U.S. at 762-63).

employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Petrosino v. Bell Atlantic,* 385 F.3d 210, 225 (2d Cir. 2004) (citing *Burlington Indus., Inc.,* 524 U.S. at 765; *accord Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998); *Mack v. Otis Elevator Co.*, 326 F.3d 116, 125 (2d Cir. 2003), *cert. denied*, 540 U.S. 1016 (2003)).[12] For Plaintiff to establish a constructive discharge based on sexual harassment or hostile work environment, as alleged in the instant case, however, Plaintiff must demonstrate "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign." *Suders,* 542 U.S. at 147 (quoting *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1160 (8th Cir. 1999) ("[A]lthough there may be evidence from which a jury could find sexual harassment, . . . the facts alleged [for constructive discharge must be] . . . so intolerable that a reasonable person would be forced to quit.")) (bracketed material added); *Petrosino,* 385 F.3d at 230 (citing cases).  "[A]n employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Suders,* 542 U.S. at 141 (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 838-39 (3d ed. 1996)).  Where a constructive discharge has occurred, "an employee's resignation is treated - for the purpose of establishing a prima facie [sic] case of employment discrimination - as if the employer had actually discharged the employee." *Spence v. Maryland Cas. Co.,* 803 F.Supp. 649, 667 (W.D.N.Y. 1992) (quoting *Lopez v. S.B.*

---

[12]  In both *Burlington* and *Faragher*, plaintiffs voluntarily quit employment, *i.e.*, were constructively discharged, rather than endure the steady stream of sexual harassment directed against them by their respective superior management.

*Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987)), *aff'd,* 995 F.2d 1147 (2d Cir. 1993).

"[T]he plaintiff who alleges no tangible employment action has the duty to mitigate harm,

but defendant bears the burden to allege and prove that the plaintiff failed in that

regard." *Suders, supra,* at 152.

To establish a *prima facie* case of constructive discharge, Plaintiff is required to

establish "the constructive discharge occurred in circumstances giving rise to an

inference of discrimination on the basis of [his] membership in [a protected] class."

(Internal quotation omitted); *Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003) (quoting

*Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)).   Proof that a

plaintiff's constructive discharge was caused by discriminatory animus based on her

gender "can be established 'directly through evidence of retaliatory animus directed

against a plaintiff,' or 'indirectly by showing that the protected activity was followed

closely by discriminatory treatment . . . through other evidence such as disparate

treatment of fellow employees who engaged in similar conduct.'" *Terry*, 336 F.3d at 152

(citing *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 444 (2d Cir.

1999), *abrogated on other grounds by Kessler v. Westchester County Dept. Of Soc.

Servs.,* 461 F.3d 199 (2d Cir. 2006) (quoting *DeCintio v. Westchester County Med. Ctr.*,

821 F.2d 111, 115 (2d Cir.), *cert. denied,* 484 U.S. 965 (1987)).

Plaintiff, in the instant case, presented evidence sufficient for the trier of fact to

conclude that a reasonable person in Plaintiff's position would have felt compelled to

resign based on the intolerable working conditions that Plaintiff faced created by

Bunch's conduct of a sexual nature toward Plaintiff, as well as the failure of Majestic's

managers to intervene in response to Plaintiff's repeated complaints.   Moreover, the

fact-finder may conclude, based on the record, that Plaintiff was disparately treated and continuously discriminated against based on her membership in a protected class, her sex.  42 U.S.C. § 2000(e)(1).  As such, Plaintiff has presented evidence of constructive discharge sufficient to avoid summary judgment, and as such Defendant's motion should be DENIED.


## IV.    Statute of Limitations

In support of summary judgment, Defendants argue that several of the alleged acts underlying Plaintiff's claims, specifically those occurring between the summer of 2003 and March 2004 are time-barred by the applicable limitations period.  Defendants' Reply Memorandum at 6.  Plaintiff has not responded to this argument.

"A Title VII claim is time-barred if the plaintiff, after filing a charge with the appropriate state or local agency, does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'" *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-5(e)(1)). The statute of limitations for claims brought under the NYHRL is three years.  N.Y.C.P.L.R. § 214(2) (McKinney 2008); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). Discrete discriminatory acts occurring outside 300-day limitations period for Title VII claims are not actionable under Title VII. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005); *Rechichi v. Eastman Kodak Co.*, 2004 WL 1698333, at *5 (W.D.N.Y. Jan. 21, 2004).  Nevertheless, adverse employment actions occurring outside the timely filing period are properly considered as "background evidence to support the actionable claims."  *Jute*, 420 F.3d at 176.

"Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hospital*, 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied,* 511 U.S. 1052 (1994); *Spurlock v. NYNEX*, 949 F.Supp. 1022, 1034 (W.D.N.Y. 1996). "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Jute,* 420 F.3d at 177 (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (*per curiam*) (internal quotation marks omitted)). "Reasonably related conduct is that which "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Jute, supra*, at 177 (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001)), *cert. denied,* 536 U.S. 922 (2002) (internal quotation omitted).

Initially, the court finds no merit in Defendants' contention that Plaintiff's allegations of misconduct outside the applicable time frame may not be considered as evidence of a continuing violation because Plaintiff did not allege discrimination based on a continuing violation in its complaint to the EEOC. Defendants' Reply Memorandum at 6*; See Jute,* 420 F.3d at 177; *Legnani,* 274 F.3d at 686. So long as discriminatory acts outside the limitations period constitute reasonably related conduct "within the

scope of the EEOC investigation" and "can reasonably be expected to grow out of the charge that was made," *Jute, supra*, at 177, the conduct may be considered by the court to determine Defendants' liability.  *Patterson*, 375 F.3d at 220.  In the instant case, because Plaintiff filed the EEOC charge on March 1, 2005, only those acts occurring within 300 days of March 1, 2005, *i.e.*, on or after May 5, 2004, are actionable as a legal basis for relief under Title VII, and Plaintiff's Title VII claims based on hostile work environment sexual discrimination that occurred before May 5, 2004, are time-barred, but may be considered as background evidence of a continuing violation.  *Jute,* 420 F.3d at 177.  Furthermore, insofar as Plaintiff's claims also are brought pursuant to NYHRL, because the instant Complaint was filed on January 6, 2006, only the Defendants' discriminatory acts occurring within three years prior to January 6, 2006, *i.e.*, on or after January 6, 2003, are actionable.

As such, the 54 cards Bunch gave to Plaintiff between summer 2003 and March 2004, alone, are not actionable under Title VII, as they are barred by the applicable limitations period, but may be used as background evidence of continuous discrimination by Defendants in support of Plaintiff's actionable Title VII claims.  On the other hand, although not actionable under Title VII, the cards Bunch presented Plaintiff on or after January 6, 2003, are admissible as evidence of independent acts of discrimination for purposes of the NYHRL.  Timely discriminatory actions under Title VII include alleged incidents of sexually related touching of Plaintiff by Bunch during the Pool and Spa Conference week in Las Vegas in early December of 2004 despite Plaintiff's protests, the inadequacy of Larry Bunch's response to Plaintiff's request to take time off from work upon returning to Buffalo after the trip to Las Vegas, Kathy

30

Scotland's instruction that Plaintiff should dine with Bunch at the Las Vegas conference

and "take one for the team" after Plaintiff expressed she was uncomfortable around

Bunch, and the confrontation outside the restroom at Majestic between Bunch and

Plaintiff a few weeks after the trip to Las Vegas. [13]

Therefore, Defendants' motion, based on the statute of limitations defense

should be DENIED in part, and GRANTED in part.


## V.    Plaintiff's NYHRL Claim

Defendant moves for summary judgment on Plaintiff's NYHRL claims, asserting

Plaintiff's NYHRL claims should be dismissed for the same reasons the court should

grant summary judgment on Plaintiff's Title VII claim.  Defendants' Memorandum at 17.

Plaintiff does not address Defendants' argument.

28 U.S.C. § 1367(a) authorizes district courts to exercise supplemental

jurisdiction

> over all other claims that are so related to claims in the
> action within such original jurisdiction that they form part of
> the same case or controversy under Article III of the United
> States Constitution.

 28 U.S.C. § 1367(a).

Where a district court dismisses "all claims over which it has original jurisdiction,"

28 U.S.C. § 1367(c)(3), it may decline to exercise supplemental jurisdiction over the

---

[13] Plaintiff timely filed her claim for constructive discharge with the EEOC on March 1, 2005, as it was within 300 days of December 16, 2004, the day Plaintiff stopped working for Majestic.  *See Flaherty v. Metromail Corp.*, 235 F.3d 133, 137-39 (2d Cir. 2000); Fact Statements ¶¶ 105, 112.

state claim. [14]   "[T]he discretion to decline to exercise supplemental jurisdiction is

available only if founded upon an enumerated category of [28 U.S.C. § 1367(c)]."

*Treglia v. Town of Manilus,* 313 F.3d 713, 723 (2d Cir. 2002) (quoting *Itar-Tass Russian*

*News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 448 (2d Cir. 1998)).

The analysis applied to discrimination claims under Title VII is the same analysis applied

to NYHRL claims.  *Weinstock v. Columbia University*, 224 F.3d 33, 41-42 (2d Cir. 2000),

*cert. denied*, 540 U.S. 811 (2003); *Smith v. Xerox Corp.,* 196 F.3d 358, 363 (2d Cir.

1999), *overruled on other grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F3d

134 (2d Cir. 2006).

Here, Plaintiff's NYHRL claims arises from the same set of operative facts as her

Title VII claim, and no ground for declining jurisdiction under 28 U.S.C. § 1367(c) is

present.  Based on the foregoing, and as this court has recommended denying

Defendants' request for summary judgment directed to Plaintiff's Title VII and

constructive discharge claims, based on sexual harassment and hostile working

conditions, Discussion, *supra,* at 22, 24-25, the court should exercise supplemental

jurisdiction over Plaintiff's NYHRL state law claims.  *Treglia,* 313 F.3d at 722-24.

Defendant's motion for summary judgment on Plaintiff's NYHRL claims should,

therefore, be DENIED.

---

[14] District Courts may also decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," or "(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(1), (2), (4).

**VI.     Punitive Damages**

Pursuant to court order dated September 26, 2007 (Doc. No. 30), Plaintiff's

motion to compel information pertaining to Defendants' financial status to estimate her

entitlement to punitive damages was dismissed as premature and without prejudice

should Defendants' cross-motion for summary judgment be denied.  Based on this

court's recommendation that Defendants' motion be denied, and if the District Court

adopts such Report and Recommendation, Plaintiff may renew her motion to compel

information relevant to Defendants' financial status to determine her entitlement to

punitive damages.  *See Walker v. AMR Services Corp.*, 971 F.Supp. 110, 117 (E.D.N.Y.

1997) (noting that significant punitive damages awards are upheld on appeal in Title VII

gender discrimination cases).


## CONCLUSION

Based on the foregoing, Defendants' motion (Doc. No. 21) should be GRANTED

in part, and DENIED in part.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
        LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      March 28, 2008
            Buffalo, New York


33

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the

Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of

Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Ordered.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,*

892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys

for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        March 28, 2008
              Buffalo, New York